UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

LESTER LEMONS, III, and
WALTEL DEJESUS,

                    Plaintiffs,

v.                                      Case No. 15-cv-1532-pp

WILLIAM POLLARD, ANTHONY MELI,
LT. LARSON, SGT. PETERSON,
SGT. SCOUTEN, SGT. PRICE,
CO WOLF, CO WINTERS, CO POCH,
CO SWIGEN, CO ROSENTHAL, CO LASH,
CO BADE, and NURSE JAMESON,

                      Defendants.
_____

### ORDER GRANTING PLAINTIFFS' MOTIONS FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FULL FILING FEE (DKT. NOS. 3, 5) AND SCREENING PLAINTIFFS' COMPLAINT
_____

Plaintiffs Lester Lemons, III and Waltel DeJesus, state prisoners who are representing themselves, filed a complaint under 42 U.S.C. §1983, alleging that their civil rights were violated. Dkt. No. 1. The case is before the court on the plaintiffs' motions for leave to proceed without prepaying the full filing fee (Dkt. No. 2) and for screening of the plaintiffs' complaint.

I.     **MOTIONS FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FULL FILING FEE**

The Prison Litigation Reform Act applies to this case because the plaintiffs were incarcerated when they filed their complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with his lawsuit without prepaying the civil case-filing fee, as long as he meets

1

certain conditions. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time through deductions from his prisoner account. <u>Id</u>. In a multiple plaintiff prisoner case, each prisoner is required to pay the statutory filing fee of $350.00 over time after paying an initial partial filing fee. See <u>Boriboune v. Berge</u>, 391 F.3d 852, 855-56 (7th Cir. 2004).

On December 23, 2015, the court entered an order requiring Lemons to pay an initial partial filing fee of $0.33. Dkt. No. 8. Lemons paid that fee on February 16, 2016. Accordingly, the court will grant Lemons' motion for leave to proceed without prepaying the filing fee, and will allow him to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

On January 7, 2016, the court issued an order requiring DeJesus to pay an initial partial filing fee of $4.62. Dkt. No. 13. DeJesus paid that fee on January 28, 2016. Accordingly, the court will grant DeJesus's motion for leave to proceed without prepaying the filing fee, and will allow him to pay the balance of the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

2

## II. SCREENING OF THE PLAINTIFFS' COMPLAINT

### A. Standard for Screening Complaints

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss part or all of a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint, however, that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint

3

allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, the court must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived the plaintiff of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). When a plaintiff is representing himself, the court is obliged to give his allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

   B.   Facts Alleged in the Complaint

The plaintiffs allege that between October 1 and October 30, 2015, officers Wolf, Poch, Peterson, Scouten, Winters, and unnamed officers "openly provoked and threaten[ed]" the plaintiffs because the plaintiffs had filed inmate complaints complaining about these officers' mistreatment. Dkt. No. 1 at 1-2.

4

On October 30, 2015, Wolf allegedly refused to give the plaintiffs their mail, in order to provoke them into a confrontation. Dkt. No. 1 at 2. In response, the plaintiffs allege that they "peacefully protested" by covering the windows in their cell doors. Id. At about 8:00 p.m., defendant Anthony Meli, the Waupun Correctional Institution Security Director, instructed officers to "use whatever force necessary" to remove plaintiff Lemons from his cell. Dkt. No. 1 at 2, 3. Also, at about 8:00 p.m., Lemons' toilet overflowed (the significance of this event will become apparent below). Id. at 2.

Lemons alleges that at 8:30 p.m. Larson Peterson, Scouten, Price, Wolf, Bade, Lash, Rosenthal, Poch, Winters, and Swigen came to his cell "armed with O.C. chemical agent projecto jet, rioting pepper ball gun, electronic Tasers, padded and plastic shields, while dressed in full rioting gear and threatened [him] with use of these weapons if [he] didn't come out." Id. The plaintiff says he was afraid, so he wrapped himself in his linens to protect himself from physical harm, and refused to come out. Id.

Larson instructed Lemons to lay on the floor on his belly with his arms spread out like an airplane; Lemons complied with this order and laid down in the overflowed toilet water. Id. The officers then entered Lemons' cell. According to Lemons, Wolf took a "cheap shot" and punched Lemons in the face with a closed fist. Id. Lemons says his head hit the floor and he temporarily lost consciousness. Id. He regained consciousness because Larson allegedly tased him several times while yelling, "Taser, Taser, Taser." Id. Lemons states that Larson used the Taser on his back, right arm, right leg and the left side of his

5

face. Id. Because Lemons was lying face down in the toilet water, he says he felt like he was being electrocuted. Id. He alleges all of this took place "without [his] resistance and with [his] compliance." Id.

Lemons claims he suffered "several open wounds to [his] back, arm, leg, neck, face" and "numbness in his left arm, ligature marks opened from the mechanical restraints on [his] wrist and ankle, a bloody and [swollen] lip, also a blacked [swollen] eye from the 'cheap shot.'" Id. at 2-3. Lemons also says he could hardly breathe because of the choke hold they placed him in while they escorted him to the strip cage. Id. at 3.

Lemons states that following this event, he requested medical attention from the Health Services on-call nurse, defendant Jameson. Id. According to Lemons, Jameson refused to treat him, stating "[A]in't shit wrong with you you'll be alright." Id. Lemons alleges he also asked Jameson for his inhaler, but Jameson refused, saying, "[N]ot while you are on control [sic]." Id. Jameson then walked away without looking at Lemons' injuries. Id.

That same night, at about 8:10 p.m., DeJesus alleges that Meli came to his cell, and gave permission to use whatever force was necessary to remove him from his cell. Id. DeJesus alleges that at about 9:00 p.m., Larson, Scouten, Peterson, Price, Wolf, Poch, Lash, Rosenthal, Swigen, Bade and Winters came to his cell "armed with O.C. chemical agent project jet, rioting pepper ball gun, electronic Tasers, padded and plastic shields, while dressed in full riot hear and threatened to use these weapons on [him] if [he] did not come out." Id.

6

DeJesus says he was afraid, so he wrapped himself in his linens to protect himself from being harmed, and he refused to come out. Dkt. Id.

DeJesus alleges that Larson then instructed Winters "to approach [his] cell front with a rioting pepper ball gun." Id. Winters then "discharged the pepper ball gun into [his] cell striking [him] twenty-three times . . . ." Id. DeJesus alleges he suffered severe welts all over his body, some of which started "spewing blood." Id. He states that he requested medical attention from Jameson, the on-call Health Services Nurse, but Jameson refused to provide treatment, saying, "You'll be alright, you got what you deserved you brought all of this on yourself." Id.

  C. Legal Analysis of Alleged Facts

As an initial matter, the court will dismiss William Pollard as a defendant, because the plaintiffs' complaint contains no allegations that Pollard was personally involved in the events of October 30, 2015. Title 42 U.S.C. §1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the *individual* defendant caused or participated in a constitutional violation." Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996) (emphasis added) (quoting Sheik-Abdi v. McClellan, 37 F.3d 1240, 1248 (7th Cir. 1994)). In other words, §1983 makes public employees liable "for their own misdeeds but not for anyone else's." Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir.2009). While the plaintiffs may have named Pollard because they assumed, as warden, that he was the supervisor of the defendants that the plaintiffs believe deprived them of

7

their constitutional rights, 42 U.S.C. §1983 does not allow plaintiffs to sue supervisors for the violations of their subordinates. See Pacelli v. deVito, 972 F.2d 871, 878 (7th Cir. 1992); West By and Through Norris v. Waymire, 114 F.3d 646, 649 (7th Cir. 1997).

The plaintiffs allege that the remaining defendants subjected them to excessive force. Under the Eighth Amendment, the central question in evaluating an excessive force claim is "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of harm." Fillmore v. Page, 358 F.3d 496, 503 (7th Cir. 2004) (citations omitted).

The court concludes that the plaintiffs have alleged sufficient facts to allow them to proceed on excessive force claims against Wolf (who allegedly punched Lemons in the face), Larson (who allegedly repeatedly tased Lemons while he was lying flat on his belly in water), and Winters (who allegedly shot DeJesus twenty-three times with a pepper ball gun through DeJesus's cell door).

The court concludes, however, that the plaintiffs have not alleged sufficient facts to allow them to proceed on excessive force claims against Peterson, Scouten, Price, Poch, Swigen, Rosenthal, Lash or Bade. Although the plaintiffs allege that these defendants approached their cells in full riot gear, they do not allege that these defendants actually used any force against them. Section 1983 does not create liability for groups, nor does it allow a plaintiff to

8

Case 2:16-cv-00371-PP    Filed 03/02/16    Page 8 of 14    Document 20

sue one person for another's actions. See Pacelli v. DeVito, 972 F.2d 871, 877-78 (7th Cir. 1992).

That said, "[an] officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under §1983 if that officer had reason to know: (1) that excessive force was being used . . . and the officer had a *realistic* opportunity to intervene to prevent the harm from occurring." Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994) (emphasis in original). Given that all of these defendants allegedly were in close proximity to Wolf, Larson and Winters, and that the court has concluded that the plaintiffs have alleged enough to bring excessive force claims against those three defendants, the court will allow the plaintiffs to proceed on claims that Peterson, Scouten, Price, Poch, Swigen, Rosenthal, Lash and Bade failed to intervene to stop Wolf, Larson, and Winters from using excessive force.

Neither plaintiff alleges either that defendant Anthony Meli used force against them or that he had a realistic opportunity to intervene to stop Wolf, Larson and Winters from using excessive force. The plaintiffs allege only that Meli instructed the officer to "use whatever force necessary" to remove them from their cells. This language—to use whatever force was *necessary* to remove the plaintiffs—indicates that Meli did *not* authorize the officers to use *more* force than was necessary; "excessive force" is, by its nature, *more* force than is necessary for the situation. Thus, the plaintiffs' own facts do not support an excessive force claim against Meli. And if the plaintiffs sued Meli because they

9

believed that he held a supervisory capacity regarding the other defendants, as explained above, 42 U.S.C. §1983 does not allow plaintiffs to sue supervisors for the errors of their subordinates. See Pacelli, 972 F.2d at 878; Waymire, 114 F.3d at 649. The court will dismiss Anthony Meli as a defendant.

The court finds that the plaintiffs have alleged sufficient facts to allow them to proceed on their claim that defendant Jameson was deliberately indifferent to their serious medical needs. "Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). This standard contains both an objective element (i.e., that the medical needs be sufficiently serious) and a subjective element (i.e., that the officials act with a sufficiently culpable state of mind). Id. The plaintiffs both have alleged sufficient facts to indicate that the injuries they sustained as a result of the other officers' actions constituted "serious medical needs," and they have alleged that Jameson refused to treat them—sufficiently culpable state of mind.

The court concludes that the plaintiffs have alleged sufficient facts to allow them to proceed on First Amendment retaliation claims against Wolf, Poch, Peterson, Scouten, and Winters, whom they allege provoked and threatened them as a result of their having filed inmate grievances complaining about those officers. To prevail on First Amendment retaliation claims, the plaintiffs must to show that "(1) [they] engaged in activity protected by the First Amendment; (2) [they] suffered a deprivation that would likely deter First

10

Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the [d]efendants' decision to take the retaliatory action." Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir.2009) (quoting Woodruff v. Mason, 542 F.3d 545, 551 (7th Cir.2008)). At this early stage in the proceedings, the court finds that the plaintiffs have alleged that they engaged in protected activities (filing grievances); that they suffered deprivations that could deter them from engaging in such activities in the future (being provoked and threatened); and that their First Amendment activities were at least a motivating factor in the defendants' decision to take the retaliatory actions.

The court advises the plaintiffs that, pursuant to the Seventh Circuit's ruling in Boriboune, each plaintiff will be held legally responsible for the filings made in this case on his behalf, and the representations made in those filings. Boriboune, 391 F.3d at 854-55. See also Fed. R. Civ. P. 11. Accordingly, each plaintiff will be subject to sanctions under Fed. R. Civ. P. 11 if the court finds that such sanctions are warranted.

### III. CONCLUSION

The court **GRANTS** the plaintiffs' motions for leave to proceed without prepaying the full filing fee. Dkt. Nos. 3, 5.

The court **DISMISSES** defendants William Pollard and Anthony Meli.

The court **ALLOWS** the plaintiffs to proceed on their Eighth Amendment claims against defendants Lt. Larson, Sgt. Peterson, Sgt. Scouten, Sgt. Price, CO Wolf, CO Winters, CO Poch, CO Swigen, CO Rosenthal, CO Lash, CO Bade,

11

Case 2:16-cv-00371-PP   Filed 03/02/16   Page 11 of 14   Document 20

and Nurse Jameson and on their First Amendment claims against Wolf, Poch, Peterson, Scouten, and Winters.

The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from plaintiff Lester Lemons, III's prison trust account the $349.67 balance of the filing fee by collecting monthly payments from Lemons' prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The Secretary of the Wisconsin Department of Corrections or his designee shall clearly identify the payments by the case name and number assigned to this action.

The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from plaintiff Waltel DeJesus's prison trust account the $345.38 balance of the filing fee by collecting monthly payments from the DeJesus's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The Secretary of the Wisconsin Department of Corrections or his designee shall clearly identify the payments by the case name and number assigned to this action.

The court further **ORDERS** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of the plaintiffs' complaint and this order are being electronically sent today to

the Wisconsin Department of Justice for service on Lt. Larson, Sgt. Peterson, Sgt. Scouten, Sgt. Price, CO Wolf, CO Winters, CO Poch, CO Swigen, CO Rosenthal, CO Lash, CO Bade and Nurse Jameson.

The court further **ORDERS** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, defendants Lt. Larson, Sgt. Peterson, Sgt. Scouten, Sgt. Price, CO Wolf, CO Winters, CO Poch, CO Swigen, CO Rosenthal, CO Lash, CO Bade and Nurse Jameson shall file a responsive pleading to the complaint within **sixty (60)** days of receiving electronic notice of this order.

The court further **ORDERS** that, pursuant to the Prisoner E-Filing Program, the plaintiffs shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility and, therefore, if the plaintiffs are no longer incarcerated at one of those institutions, they must submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**The plaintiffs should not send copies of pleadings to the court's chambers.** Doing so will only slow proceedings. Because the clerk's office will electronically docket every pleading in the case, the plaintiffs do not need to

mail copies of their pleadings to the defendants. The court further advises the plaintiffs that if they fail to timely file documents, this may result in the dismissal of their case for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court will send a copy of this order to the warden of the facility where the plaintiffs are incarcerated.

Dated in Milwaukee, Wisconsin this 2nd day of March, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge